UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHARLIE EARL SMITH,

    Petitioner,

v.                                             Case No. 5:20-cv-95-RV-MJF

MARK INCH,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Charlie Earl Smith has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") moves to dismiss the petition as untimely. (Doc. 7). Smith opposes the motion. (Doc. 9). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Smith's petition should be dismissed as untimely.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background and Procedural History

On April 23, 2012, Smith entered an open plea of *nolo contendere* to Armed Robbery (Count I) and Aggravated Assault (Count II), in Bay County Circuit Court Case No. 2011-CF-178. (Doc. 7, Ex. A at 34-35 (Plea Agreement); Ex. I (Tr. of Plea Hr'g)).[2] On May 29, 2012, the trial court adjudicated Smith guilty and sentenced him to the statutory-maximum 30 years of imprisonment for the Armed Robbery and 5 years of imprisonment for the Aggravated Assault, to run consecutively. (Ex. A at 58-64 (J. and Sentence)). Smith did not appeal the judgment.

On June 4, 2012, Smith filed a *pro se* motion to withdraw his plea under Florida Rule of Criminal Procedure 3.170(*l*). (Ex. A at 68-72). On November 29, 2012, the trial court dismissed the motion. (*Id*. at 89). Smith did not appeal that order.

On January 18, 2013, Smith filed a counseled motion to withdraw his plea under Rule 3.170(*l*). (Ex. A at 94-95). The motion was denied the same day. (*Id*. at 96 (court minute sheet)). Smith did not appeal that order.

On March 7, 2014, Smith filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Ex. A at 103-

---

[2] Citations to the state court record are to the electronically-filed exhibits attached to the State's motion to dismiss. (Doc. 7). When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

14 (original motion); Ex. A at 115-28 (amended motion)). The state circuit court granted an evidentiary hearing and appointed counsel to represent Smith. (Ex. B at 241-44, 250).

The evidentiary hearing was held on March 18, 2016. (Ex. D (Tr. of Evidentiary Hr'g.)). At the outset of the hearing, Smith and the State addressed Smith's claim that trial counsel was ineffective for failing to object to an incorrect sentencing scoresheet, which Smith raised as Ground Three of his amended Rule 3.850 motion. (*Id*. at 384-86). Smith and the State entered into evidence a stipulated, corrected sentencing scoresheet. (*Id*. at 384-85). The State maintained that the sentencing error did not undermine the validity of Smith's plea, but agreed that Smith should be resentenced under the corrected scoresheet. (*Id*. at 385-86).

At the close of the evidentiary hearing, the state court ruled: "Your motion is denied. So we need to go ahead and have resentencing." (Ex. D at 418 (Tr. of Hr'g)). The court resentenced Smith—based on the corrected scoresheet—to the same sentence as before *nunc pro tunc* to May 29, 2012. (*Id*. at 418-22). An amended judgment and sentence was entered on March 18, 2016, designated "***nunc pro tunc*** 5/29/2012"—the date of Smith's original judgment. (Ex. B at 350 (J. and

Sentence);[3] *see also* Ex. K at 6 n.4 (order referring to 2016 judgment as an "amended" judgment)). The trial court informed Smith that he had 30 days to appeal. (Ex. D at 422).

On March 22, 2016, Smith filed a counseled motion to correct the amended sentence to reflect additional jail credit, (Ex. B at 357-58), but he withdrew the motion on April 5, 2016. (Ex. C at 370). Smith did not appeal the amended judgment and sentence.

On March 23, 2016, Smith filed a counseled notice of appeal of the order denying his Rule 3.850 motion. (Ex. B at 359). The postconviction appeal was assigned Case No. 1D16-1345. (R. & R., Attach. 1). On May 23, 2016, the Florida First District Court of Appeal ("First DCA") relinquished jurisdiction and remanded the case to the circuit court for a period of 20 days for the purpose of entering a written order disposing of Smith's amended Rule 3.850 motion. (*Id.*).

The state circuit court entered its written order on June 7, 2016. (Ex. K). The court granted Smith's Rule 3.850 motion as to Ground Three to the extent that Smith

---

[3] The judgment form listed various options for indicating the type of sentence, which included options for a "Probation Violator," "Community Control Violator," "Retrial," and "Resentence." (Ex. B at 350). The trial court selected "Resentence."

was resentenced, and denied relief on Smith's remaining claims. (*Id*.). As to Ground Three, the court ruled as follows:

> In Ground Three, the Defendant alleges that counsel was ineffective for failing to object to an incorrectly calculated scoresheet. The Defendant indicates that, as reflected the scoresheet before the Court during sentencing, the lowest permissible sentence was 114.45 months or 9.5 years. The Court sentenced the Defendant to 30 years for armed robbery and 5 years for aggravated assault to run consecutive to one another. The Defendant points to two errors in the scoresheet: 1) the primary offense was listed as a level 9 offense but was actually a level 8 offense, and 2) the scoresheet reflects a legal status violation, which carries 4 points, but the Defendant was not on supervision at the time he committed these offenses. The Defendant alleges that his attorney should have known about these errors and should have objected to the incorrect calculation. Had his attorney objected, the Defendant asserts that his lowest permissible sentence would have been 97.35 months or 8.1 years. He claims that there is a reasonable probability that the Court would have given "more consideration" to the Defendant's lowest permissible sentence and sentenced him to a lesser sentence if these corrections had been made.
>
> As indicated above, the State and the defense prepared a corrected scoresheet for the hearing, which this Court considered.FN3 However, the Court finds that the same sentence would have been imposed regardless of the changes in the scoresheet. In an abundance of caution, the Court granted resentencing with the benefit of the corrected scoresheet, and sentenced the Defendant to thirty years in prison for Armed Robbery and a consecutive five years in prison for Aggravated Assault.FN4
>
>> FN3  The legal status violation points were not removed; however, the defendant did not present any evidence at the hearing that these points were erroneously assessed. Further, the defense stipulated to the corrected scoresheet.

>  FN4  An amended judgment and sentence was entered on March 18, 2016.

(Ex. K at 5-6).

On July 29, 2016, postconviction counsel filed an *Anders* brief in Smith's postconviction appeal.[4] (Ex. E). The First DCA directed counsel to show cause why the *Anders* brief should not be stricken, pursuant to *Smith v. State*, 956 So. 2d 494 (Fla. 1st DCA 2007). (Ex. F). In *Smith*, the First DCA struck an *Anders* brief filed by appointed counsel in a postconviction appeal "[b]ecause no Sixth Amendment right to counsel applies in this appeal." 956 So. 2d at 495.

In response, Smith's postconviction counsel moved to withdraw as counsel for Smith. (Ex. F). On August 31, 2016, the First DCA struck the *Anders* brief, granted postconviction counsel's motion to withdraw, advised Smith that he was "now appearing in proper person in further proceedings before this court," and set a 30-day deadline for Smith to file an initial brief. (Ex. G). The First DCA warned Smith: "The failure to file an initial brief within the time allotted by this order may result in the imposition of sanctions, including dismissal of this appeal without further opportunity to be heard." (*Id*.).

---

[4] *See Anders v. California*, 386 U.S. 738 (1967).

Smith did not file an initial brief. On October 17, 2016, the First DCA issued a show cause order. (Ex. H). After Smith failed to respond, the First DCA dismissed the postconviction appeal on December 15, 2016, stating: "Not having received a response to this Court's order of August 31, 2016, requiring appellant to file the initial brief, the above-styled cause is hereby dismissed." (*Id*.).

On April 18, 2018, Smith filed a *pro se* motion to correct sentence under Fla. R. Crim P. 3.800(a), which he later amended. (Ex. L at 1-27 (initial motion); *id*. at 28-46 (amended motion)). The state circuit court denied the motion on August 1, 2018. (*Id*. at 47-48). The First DCA summarily affirmed. *Smith v. State*, 280 So. 3d 455 (Fla. 1st DCA 2019) (Table) (per curiam) (copy at Ex. O). The mandate issued on October 28, 2019. (*Id*.).

Smith filed his *pro se* federal habeas petition on January 27, 2020. (Doc. 1 at 1). The State asserts that the petition is time barred. (Doc. 7).

## II. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Smith's § 2254 petition, because his petition was filed after the AEDPA's effective date—April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA establishes a one-year period for a state prisoner to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). This period runs from the latest of:

>   (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

Smith does not assert that a State-created impediment to his filing his federal habeas petition existed, that he bases his claims on a right newly-recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his judgment became final. Accordingly, the statute of limitations is measured from the remaining trigger, which is the date Smith's judgment became final. *See* 28 U.S.C. § 2244(d)(1).

Two judgments were entered in Smith's case—the May 29, 2012, original judgment, and the March 18, 2016, amended judgment entered *nunc pro tunc* to May 29, 2012. The State asserts that Smith's § 2254 petition is untimely regardless of which judgment is deemed the operative judgment under § 2244(d)(1)(A). (Doc. 7).[5]

The State is correct. This court need not decide whether the 2016 amended sentence entered *nunc pro tunc* constitutes a "new judgment" for purposes of § 2244(d)(1)(A), because even assuming to Smith's benefit that it does—and that the limitations period should be calculated from the date that judgment became final—Smith's § 2254 petition is untimely.[6]

---

[5] The State has preserved the argument that the amended judgment entered in 2016 does *not* qualify as a new, intervening judgment for purposes of § 2244(d)(1)(A) because it was imposed *nunc pro tunc* to May 29, 2012. (Doc. 7 at 8-9) (citing *Magwood v. Patterson*, 561 U.S. 320 (2010); *Osbourne v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1261 (11th Cir. 2020)).

[6] If the "new judgment" question were addressed, it likely would *not* be resolved in Smith's favor. *See Osbourne*, 968 F.3d at 1266-67 (holding that a Florida court's amended sentence—entered *nunc pro tunc* to the date of the original judgment—did not constitute a new judgment for purposes of § 2244(b), because the *nunc pro tunc* designation related back to the date of the original judgment; the *nunc pro tunc* designation was "the determining factor" in the analysis). The court explained in *Osbourne*: "under Florida law, nunc pro tunc means now for then and when a legal order or judgment is imposed nunc pro tunc it refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record was absent or defective." 938 F.3d at 1266 (alterations, internal quotations marks and citations omitted); *see also James v. Sec'y, Dep't of Corr.*, ___ F. Supp. 3d ___, 2020 WL 6381559 (S.D. Fla. Oct. 30, 2020) (concluding that Florida prisoner's

Smith's amended judgment and sentence was entered on March 18, 2016, *nunc pro tunc* to May 29, 2012. (Ex. B at 350-56). Smith did not appeal the amended judgment and sentence. His time for filing a notice of appeal in the First DCA expired on April 18, 2016. *See* Fla. R. App. P. 9.110(b); Fla. R. App. P. 9.140(b)(3) (providing that an appeal by a defendant in a criminal case is commenced by filing a notice of appeal "at any time between the rendition of a final judgment and 30 days following rendition of a written order imposing sentence.").[7]

Accordingly, Smith's amended judgment became "final" for purposes of § 2244(d)(1)(A), on April 18, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that for petitioners who do not pursue direct review all the way to the United States Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires.").

---

corrected sentence entered *nunc pro tunc* to the date of the original judgment did not qualify as a new judgment for purposes of § 2244(d)(1)(A)).

[7] The 30-day appeal period expired on April 17, 2016. However, because that day was a Sunday, Smith had until the end of the day on Monday, April 18, 2016, to file his notice of appeal of the amended judgment. *See* Fla. R. App. P. 9.420(f).

Smith's federal habeas clock immediately tolled due to the pendency of his Rule 3.850 proceeding. *See* 28 U.S.C. § 2244(d)(2). Smith's Rule 3.850 proceeding remained pending, and statutorily tolled the limitations period, until December 15, 2016—the date his postconviction appeal was dismissed. *See Carey v. Saffold*, 536 U.S. 214, 220 (2002) ("[U]ntil the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"); *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383-84 (11th Cir. 2006) (holding that the term "pending" as used in § 2244(d)(2) refers to the continuation of the collateral review process, or the time until the process is completed).

The federal habeas limitations period began to run one day later, on December 16, 2016, and expired one year later, on December 18, 2017.[8] *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method"). Smith did not file any tolling applications during that critical one-year period. *See* 28 U.S.C. § 2244(d)(2). Smith's Rule 3.800(a) motion filed on April 18, 2018, did not statutorily toll the limitations period, because the limitations period already expired. *Webster v. Moore*, 199 F.3d

---

[8] Because December 16, 2017 was a Saturday, Smith had until the end of the day on Monday, December 18, 2017, to file his federal habeas petition. *See* Fed. R. Civ. P. 6(a)(1)(C).

1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Smith's § 2254 petition, filed on January 27, 2020, is untimely by more than two years.

Smith does not allege that he is entitled to equitable tolling or any other exception to the limitations bar. Instead, Smith argues that the limitations period did not begin to run until he exhausted all of his state postconviction remedies. According to Smith, his petition is timely because it was filed within one year of the First DCA's October 28, 2019, mandate in his final Rule 3.800(a) proceeding. (Doc. 9 at 4-6). Smith's proposed interpretation of § 2244(d) is contrary to the plain language of the statute.

Courts are required to construe statutes in a manner that is consistent with the intent of Congress as expressed in the plain meaning of the statute's text. *Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987). The most persuasive evidence of Congressional intent is the wording of the statute. *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966).

Section 2244(d)(1) enumerates four events that trigger the commencement of the limitations period. The exhaustion of state court remedies (*i.e.*, the completion of all state postconviction proceedings) is not one of those events. Although state

postconviction proceedings may affect the *tolling* of the limitations period, *see* § 2244(d)(2), they do not affect the date upon which the limitations period *commences*. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001) (holding that the limitations period for a state prisoner to file his federal habeas petition began to run on the date his conviction became final by the conclusion of direct review, not on the date he exhausted all state postconviction remedies: "The plain language of the statute indicates that an application for state post conviction or other collateral relief does not serve to delay the date on which a judgment becomes final. Rather, such limitations merely toll the running of the statute of limitations.").

For all of the reasons discussed above, the undersigned concludes that Smith's federal habeas petition is untimely and should be dismissed.

### III. CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation

by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Respondent's Motion to Dismiss (Doc. 7) be **GRANTED**.

2. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Charlie Earl Smith*, Bay County Circuit Court Case No. 2011-CF-178, be **DISMISSED WITH PREJUDICE** as time barred.

3. The District Court **DENY** a certificate of appealability.

4. The clerk of court close this case file.

At Panama City, Florida, this 16th day of February, 2021.

/s/ *Michael J. Frank*
Michael J. Frank
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on**

**all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**